IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 21, 2008

Charles R. Fulbruge III
Clerk

No. 07-50685

CLEANCOALITION; ROBERTSON COUNTY: OUR LAND OUR LIVES

Plaintiffs-Appellants

v.

TXU POWER, doing business as TXU GENERATION COMPANY LP; OAK GROVE MANAGEMENT COMPANY LLC; TXU CORPORATION

Defendants-Appellees

Appeal from the United States District Court
for the Western District of Texas

Before REAVLEY, SMITH, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

This case of first impression involves the scope of citizen-suit jurisdiction under the Clean Air Act ("CAA"). See 42 U.S.C. § 7604(a). Plaintiffs-Appellants filed suit to enjoin Defendants-Appellees from constructing a pulverized coal-fired power plant in their community, alleging various violations of the CAA preconstruction permit process. The district court dismissed this case on the ground that, inter alia, neither of the asserted bases for subject matter jurisdiction, §§ 7604(a)(1) and 7604(a)(3), provides for jurisdiction in this case. For the reasons stated herein, we agree and, therefore, affirm the judgment of the district court.

# I. BACKGROUND FACTS

CleanCOALition and Robertson County: Our Land, Our Lives (collectively "Appellants") are environmental interest groups whose members are concerned with environmental health issues, including air quality. TXU Power, Oak Grove Management LLC, and TXU Corporation (collectively "TXU") are utility entities that have proposed the construction of a pulverized coal-fired power plant in Robertson County, Texas. Members of Appellants reside in Robertson County and allege they will be adversely affected by emissions from the plant.

On July 27, 2005, TXU applied for a preconstruction permit with the Texas Commission on Environmental Quality ("TCEQ"), which regulates the preconstruction authorization process for the State of Texas under the CAA's Prevention of Significant Deterioration ("PSD") Program. See 42 U.S.C. § 7401, et seq. On February 21, 2006, the TCEQ completed a technical review of TXU's application and issued a preliminary decision and draft permit. TXU requested the TCEQ to refer the application to the State Administrative Office of Hearings ("SOAH") for a hearing to determine whether it complied with all relevant statutory and regulatory requirements. One of the Appellants participated in this hearing. On August 23, 2006, the SOAH issued a Proposal for Decision approving the permit, subject to final review by the TCEQ.

On December 1, 2006, after expiration of a 60-day written notice,[1] Appellants filed suit against TXU alleging that its permit application does not comply with requirements of the PSD Program. Specifically, Appellants allege that (1) TXU is violating preconstruction emissions standards and limitations mandated by the CAA; and (2) TXU intends to construct its proposed plant without a CAA-compliant permit. Appellants seek, inter alia, (1) declaratory

---

[1] Prior to filing certain citizen suits, the CAA requires that aggrieved parties give 60 days notice of the standard, limitation, or order alleged to be violated to (1) the EPA, (2) the state in which the alleged violation occurred, and (3) the alleged violator. See 42 U.S.C. § 7604(b). Here, Appellants sent the requisite notice.

relief that TXU is in violation of the CAA; (2) temporary and permanent injunctive relief  prohibiting the construction of the plant; and (3) an order that TXU comply with the preconstruction requirements of the PSD Program.  They also seek an assessment of civil penalties against TXU in the amount of $27,500.00 per day for each violation.

On December 21, 2006, TXU filed a motion to dismiss based on jurisdictional, justiciability, and abstention grounds.  On May 21, 2007, the district court granted the motion to dismiss.  Specifically, the district court held that (1) Section 7604(a)(1) does not authorize citizen suits to redress alleged pre-permit, preconstruction, pre-operation CAA violations; (2) Section 7604(a)(3) of the CAA does not authorize preconstruction citizen suits against entities that either have obtained a permit or are in the process of doing so; (3) Appellants failed to present a live case or controversy because the state permit process is still ongoing; and (4) even if it had subject matter jurisdiction, the district court would abstain from exercising it pursuant to Burford v. Sun Oil Co., 319 U.S. 315 (1943) because timely and adequate state court review was available and the exercise of federal review would disrupt state efforts to establish a coherent policy with respect to a matter of substantial public concern.  Appellants filed a timely notice of appeal.[2]

---

[2] Subsequent to the filing of this appeal, on June 13, 2007, the TCEQ voted to grant the permit and on June 20, 2007, issued an order to that effect.  On August 8, 2007, the TCEQ overruled a motion for rehearing.  Separate entities -- other than the parties in this case -- have since filed suit in state court challenging the issuance of the permit.  TXU has filed an unopposed motion for this court to take judicial notice of these facts.  A court may take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  "An appellate court may take judicial notice of facts, even if such facts were not noticed by the trial court."  United States v. Herrera-Ochoa, 245 F.3d 495, 501 (5th Cir. 2001) (citing Fed. R. Evid. 201(f)).  We agree that these facts are the kind of which this court could take judicial notice, though they do not alter our disposition in this case.

## II. STATUTORY AND REGULATORY FRAMEWORK

Congress enacted the 1970 Amendments to the CAA to establish "a comprehensive national program that made the States and the Federal Government partners in the struggle against air pollution." GM Corp. v. United States, 496 U.S. 530, 532 (1990). The 1970 Amendments indicate, however, that although "[f]ederal financial assistance and leadership is essential for the development of cooperative Federal, State, regional, and local programs to prevent and control air pollution," see 42 U.S.C. § 7401(a)(4), "air pollution prevention (that is, the reduction or elimination, through any measures, of the amount of pollutants produced or created at the source) and air pollution control at its source is the primary responsibility of States and local governments." See 42 U.S.C. § 7401(a)(3). Thus, while the Amendments assign the Environmental Protection Agency ("EPA") the responsibility for "prescribing a national primary ambient air quality standard and a national secondary ambient air quality standard" for certain pollutants, see 42 U.S.C. § 7409(1)(A), they assign the States the primary responsibility for "assuring air quality within the entire geographic area comprising such State by submitting an implementation plan for such State which will specify the manner in which national primary and secondary ambient air quality standards ["NAAQS"] will be achieved and maintained within each air quality control region in such State." See 42 U.S.C. § 7407(a); see also 42 U.S.C. § 7410(a)(1) ("Each State shall . . . adopt . . . a plan which provides for implementation, maintenance, and enforcement of such primary . . . [and] secondary standard in each air quality control region (or portion thereof) within such State."). They further mandate that each State implementation plan ("SIP") include a permit program. See 42 U.S.C. § 7410(a)(2)(C). In Texas, the TCEQ administers the State CAA permit program.[3]

---

[3] Although, the EPA is required to approve SIPs that provide for the timely attainment and subsequent maintenance of primary and secondary ambient air standards as well as

In 1977, further amendments were made to the CAA in which Congress enacted the PSD Program, see 42 U.S.C. §§ 7470-7492, because the then-existing EPA New Source Performance Standards did too little to "achiev[e] the ambitious goals of the 1970 Amendments." Envtl. Def. v. Duke Energy Corp., 127 S. Ct. 1423, 1429 (2007) (citation omitted). Thus, the 1977 Amendments "[gave] added protection to air quality in certain parts of the country 'notwithstanding attainment and maintenance of' the NAAQS." Id. at 1427 (quoting 42 U.S.C. § 7470(1)). They also "assure[d] that any decision to permit increased air pollution in any area to which this section applies is made only after careful evaluation of all the consequences of such a decision and after adequate procedural opportunities for informed public participation in the decisionmaking process." 42 U.S.C. § 7470(5). To ensure CAA compliance, Congress mandated the issuance of PSD permits before construction of any "major emitting facility." See 42 U.S.C. § 7475(a)(1).

Under the 1977 Amendments -- similar to the 1970 Amendments -- "[s]tates have the primary role in administering and enforcing the various components of the PSD program." ADEC v. EPA, 540 U.S. 461, 491 (2004) (quoting 57 Fed. Reg. 28,095 (1992)). However, Congress has set forth explicit substantive and procedural requirements that must be met prior to the construction of any major emitting facility. The substantive requirements include, inter alia, a demonstration that: (1) "emissions from construction or operation of such facility will not cause, or contribute to, air pollution in excess of any" applicable emission standards; (2) "the proposed facility is subject to the

---

satisfy other CAA general requirements, see 42 U.S.C. § 7410(a)(3), the EPA has no authority to question the wisdom of a State's choices of emission limitations if they are part of a SIP that otherwise satisfies the standards set forth in 42 U.S.C. § 7410(a)(2). "Thus, so long as the ultimate effect of a State's choice of emission limitations is compliance with the national standards for ambient air, the State is at liberty to adopt whatever mix of emission limitations it deems best suited to its particular situation." Train v. NRDC, 421 U.S. 60, 79 (1975); see also Union Elec. Co. v. EPA, 427 U.S. 246, 268-69 (1976).

best available control technology for each pollutant;" (3) the facility complies with any applicable Class I area protection requirements; (4) "there has been an analysis of any air quality impacts projected for the area as a result of growth associated with such facility;" and (5) "the person who owns or operates, or proposes to own or operate, a major emitting facility for which a permit is required under this part agrees to conduct such monitoring as may be necessary to determine the effect which emissions from any such facility may have, or is having, on air quality in any area which may be affected by emissions from such source." See 42 U.S.C. §§ 7475(a)(3)-(7), 7475(d). The procedural requirements include, inter alia, a public hearing and an opportunity for any interested person to appear and submit comments on a proposed permit. See 42 U.S.C. § 7475(a)(2). The EPA further "interprets existing law and regulations to require an opportunity for state judicial review of PSD permit actions under approved PSD SIPs by permit applicants and affected members of the public in order to ensure an adequate and meaningful opportunity for public review and comment on all issues within the scope of the permitting decision, including environmental justice concerns and alternatives to the proposed source." Approval and Promulgation of Air Quality Implementation Plans; Commonwealth of Virginia -- Prevention of Significant Deterioration Program, 61 Fed. Reg. 1880 (Jan. 24, 1996) (to be codified at 40 C.F.R. pt. 52) (The EPA).

The State of Texas has an EPA-approved PSD Program. See Approval and Promulgation of Implementation Plans; Texas; Revisions to Regulations for Control of Air Pollution by Permits for New Sources and Modifications, 67 Fed. Reg. 58,697 (Sept. 18, 2002) (to be codified at 40 C.F.R. pt. 52). Pursuant to this Program, "[b]efore work is begun on the construction of a new facility or a modification of an existing facility that may emit air contaminants, the person planning the construction or modification must obtain a permit or permit amendment from the commission." Tex. Health & Safety Code § 382.0518(a).

The general requirements for a permit are set forth in Title 30 of the Texas Administrative Code, Sections 116.111 and 116.160-63. In reviewing a PSD permit application, Texas law provides an opportunity for public comment. See 30 Tex. Admin. Code § 55.150, et seq. Texas law also permits any person granted party status to request and participate in contested hearings before the SOAH. See 30 Tex. Admin. Code§ 55.200, et seq. Finally, Texas law allows for state judicial review over any permit decision. See Tex. Gov't Code § 2001.001, et seq.

## III. ANALYSIS

The district court dismissed CleanCOALition's complaint in this case for lack of subject matter jurisdiction, a decision of a legal question we review de novo. Meredith v. La. Fed'n of Teachers, 209 F.3d 398, 402 (5th Cir. 2000). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir. 1996)).

The jurisdictional question in this case involves construction of the CAA's citizen-suit provisions. "[T]he starting point in every case involving construction of a statute is the language itself." Greyhound Corp. v. Mt. Hood Stages, Inc., 437 U.S. 332, 330 (1978); see also Sutton v. United States, 819 F.2d 1289, 1292 (5th Cir. 1987) ("We begin, as we must, with an analysis of the text of the statute itself."). "If the intent of Congress is clear, that is the end of the matter; for the court . . . must give effect to the unambiguously expressed intent of Congress." Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984); see also Birdwell v. Skeen, 983 F.2d 1332, 1339 (5th Cir. 1993) ("Where the language of a statute is clear and unambiguous, courts should not undertake to add to or detract from its provisions."). "In determining the meaning of the statute, we look not only to the particular statutory language, but to the design

7

of the statute as a whole and to its object and policy." Crandon v. United States, 494 U.S. 152, 158 (1990) (citing K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291 (1988); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 51 (1987); see also Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."); King v. St. Vincent's Hosp., 502 U.S. 215, 221 (1991) ('[A] statute is to be read as a whole . . . since the meaning of statutory language, plain or not, depends on context.").

We now turn to the statutory text in question. The CAA provides for federal citizen suit jurisdiction in three circumstances:

> (1) Against any person . . . who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this Act or (B) an order issued by the Administrator or a State with respect to such a standard or limitation;
>
> (2) Against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this Act which is not discretionary with the Administrator, or
>
> (3) Against any person who proposes to construct or constructs any new or modified major emitting facility without a permit required under part C of title I (relating to significant deterioration of air quality) or part D of title I (relating to nonattainment) or who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of any condition of such permit.

42 U.S.C. §§ 7604(a)(1)-(3).[4]  Only the first and third provisions are at issue in this case.  We address each provision in turn.

A.     Whether § 7604(a)(1) authorizes citizen suits to redress alleged pre-permit, preconstruction, pre-operation CAA violations?

The district court held that § 7604(a)(1) does not authorize citizen suits to redress alleged pre-permit, preconstruction, pre-operation CAA violations.  According to the district court, when a facility is still in the pre-permit, preconstruction, pre-operation stage, it has yet to emit anything and cannot be deemed "to have violated . . . or be in violation of an emission standard or limitation."  See 42 U.S.C. § 7604(a)(1); see also Weiler v. Catham Forest Prods., Inc., 392 F.3d 532, 538 (2d Cir. 2004) ("[A § 7604(a)(1)] suit can only be brought against a private defendant after a facility has been built and begun operation."); Sugarloaf Citizens Ass'n v. Montgomery County, No. 93-2475, 1994 WL 447442 at *8 n.9 (4th Cir. Aug. 17, 1994) (unpublished) ("[U]ntil construction is completed . . . [Appellees] can neither begin emissions nor violate any emissions standard.").  Appellants, citing §§ 7604(f)(3) and 7604(f)(4),[5] respond that the

---

[4] These provisions "provide citizen participation in the enforcement of standards and regulations established under [the CAA]."  Natural Res. Def. Council v. Train, 510 F.2d 692, 699 (D.C. Cir. 1972) (citations omitted).  They reflect Congress's recognition that "citizens can be a useful instrument for detecting violations and bringing them to the attention of the enforcement agencies and courts alike."  Id. at 699-700 (citations omitted).

[5] Section 7604(f) broadly defines an "emission standard or limitation under this Act" as follows:

(1) a schedule or timetable of compliance, emission limitation, standard of performance or emission standard;

(2) a control or prohibition respecting a motor vehicle fuel or fuel additive;

(3) any condition or requirement of a permit under part C of title I (relating to significant deterioration of air quality) [and other particular types of permits not applicable here], any condition or requirement under an applicable implementation plan relating to transportation control measures, air quality maintenance plans, vehicle inspection and maintenance programs or vapor

9

phrase "emission standard or limitation" is defined broadly enough to encompass preconstruction requirements and thus, TXU can be deemed "to have violated . . . or be in violation of an emission standard or limitation" simply by filing a permit application without satisfying those requirements. We address §§ 7604(f)(3) and § 7604(f)(4) in turn.

    1.    Whether the definition of "emission standard or limitation," as set forth in § 7604(f)(3), is broad enough to include requirements for filing preconstruction permit applications?

Appellants first argue that because "emission standard or limitation" is defined to include "any condition or requirement of a permit under part C of title I (relating to significant deterioration of air quality)," see 42 U.S.C. § 7604(f)(3), which contains preconstruction requirements, TXU can be deemed "to have violated . . . or be in violation of an emission standard or limitation" simply by filing a permit application without satisfying those requirements. We disagree. One can hardly be deemed to have violated a "condition or requirement of a permit" simply by filing an incomplete permit application, in response to which a permit may or may not issue. See Miss. River Revival, Inc. v. EPA, 107 F. Supp. 2d 1008, 1015 (D. Minn. 2000) (construing Clean Water Act citizen suit provision, which was modeled after the CAA, and finding that it "does not authorize jurisdiction for an action challenging the contents of a permit

---

recovery requirements, [fuel, fuel additives, visibility protection, ozone protection, or stationary sources]; or

(4) any other standard, limitation, or schedule established under any permit issued pursuant to title V or under any applicable State implementation plan approved by the Administrator, any permit term or condition, and any requirement to obtain a permit as a condition of operations;

which is in effect under this Act (including a requirement applicable by reason of section 118 or under an applicable implementation plan.

42 U.S.C. § 7604(f).

application."); Freeman v. Cincinnati Gas & Elec. Co., No. 1:05CV179, 2005 WL 2837466, at *2 (S.D. Ohio Oct. 27, 2005) (holding that a proposed Title V air permit cannot form the basis of a citizen suit). Nevertheless, Appellants invite us to interpret the phrase "any condition or requirement of a permit" to mean "any condition or requirement to obtain a permit." We decline to do so. Instead, we interpret the phrase "of a permit" as doing nothing more than broadening the definition of "emission standard or limitation" to include those conditions and requirements found in any permit issued pursuant to any of the various provisions listed in § 7604(f)(3).[6] Until the permit issues, however, no "permit" exists to be violated. If Congress wanted to define "emission standard or limitation" to include any condition or requirement to obtain a preconstruction permit, it certainly knew how to do so. Indeed, the last clause of another section, § 7604(f)(4), specifically defines "emission standard or limitation" to include "any requirement to obtain a permit as a condition to operations."[7] No similar counterpart exists for a preconstruction permit, which is at issue in this case and treated separately under the CAA. Compare 42 U.S.C. § 7475 (preconstruction permits) with 42 U.S.C. § 7661, et seq. (operation permits). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Russello v. United States, 464 U. S. 16, 23 (1983). Thus, we presume that by not including similar

---

[6] The legislative history supports our interpretation. Indeed, according to the Joint Explanatory Statement of the Committee of Conference, §§ 7604(a)(3) and 7604(f)(3) permit citizens suits to redress "the violation of any condition or requirement specified by the State or the Administrator under a significant deterioration or non-attainment permit . . . ." See H. Conf. Rep. No. 564, at 173 (1977), as reprinted in 1977 U.S.C.C.A.N. 1502, 1554.

[7] Although Appellants argued before the district court that this clause provides an alternative basis for jurisdiction, they have since abandoned that argument, most likely because it applies to operation permits and here, Appellants are challenging TXU's application for a preconstruction permit.

language for preconstruction permits, Congress did not intend, by virtue of § 7604(f)(3), to define "emission standard or limitation" to include conditions or requirements to obtain such permits.

> 2.   Whether the definition of "emission standard or limitation," as set forth in § 7604(f)(4), is broad enough to include requirements for filing preconstruction permit applications?

The first clause of § 7604(f)(4) presents a much more difficult question. Appellants argue that because that clause defines "emission standard or limitation" to include "any other standard, limitation, or schedule established . . . under any applicable State implementation plan," see 42 U.S.C. § 7604(f), and such plans also contain preconstruction requirements, TXU can be deemed "to have violated . . . or be in violation of an emission standard or limitation" simply by filing a permit application without satisfying those requirements. The district court, noting that Appellants are challenging TXU's application for a preconstruction permit, rejected this argument on the ground that § 7604(f)(4) is limited, in its entirety, to operating permits. We disagree. It is true that § 7604(f)(4) was added as part of Title V of the CAA's operating permit program, see CAA Amendments, Pub. L. No. 101-549, Title III, § 302(f), Title VII, § 707(a)-(g), 104 Stat. 2574, 2682 (1990), and that certain clauses of that section are expressly limited to operating permits.[8]  However, the first clause is not so limited and broadly defines "emission standard and limitation" to include "any other standard, limitation, or schedule established . . . under any applicable State implementation plan."  Id.  The CAA further defines "applicable implementation plan" to include plans involving both preconstruction and

---

[8] For example, § 7604(f)(4) broadens the definition of "emission standard or limitation" to include "any other standard, limitation, or schedule established under any permit issued pursuant to title V" and "any permit term or condition, and any requirement to obtain a permit as a condition of operations."  See 42 U.S.C. § 7604(f)(4).

operating permits. See 42 U.S.C. § 7602(q).[9] Thus, the district court erred in concluding that § 7604(f)(4), in its entirety, is limited to operating permits. See Conservation Law Found., Inc. v. Romney, 421 F. Supp. 2d 344, 350 n.6 (D. Mass. 2006); Cmtys. for a Better Env't v. Cenco Ref. Co., 180 F. Supp. 2d 1062, 1082 (C.D. Cal. 2001).

TXU argues that the first clause of § 7604(f)(4) is inapplicable for a different reason. According to it, the terms "standards" and "limitations" in that clause refer only to "emission standards" and "emission limitations," which are further defined in the CAA to mean "a requirement established by the State or the Administrator which limits the quantity, rate, or concentration of emissions of air pollutants on a continuous basis[.]" See 42 U.S.C. § 7602(k). Thus, under its interpretation, because permit application requirements do not limit "the quantity, rate, or concentration of emissions of air pollutants on a continuous basis," they are not "emission standards" or "emission limitations" and, concomitantly, TXU cannot be deemed to have violated or be in violation of such standards and limitations simply by filing an alleged incomplete permit application. We disagree with TXU's basic premise that the terms "standards" and "limitations" in the first clause of § 7604(f)(4) refer only to "emission standards" and "emission limitations." Indeed, the plain text of that clause defines "emissions standards and limitations" to mean "any other standard, limitation, or schedule established . . . under any applicable State

---

[9] That section provides:

> For purposes of this Act, the term "applicable implementation plan" means the portion (or portions) of the implementation plan, or most recent revision thereof, which has been approved under section 110 [involving preconstruction permit programs], or promulgated under section 110(c), or promulgated or approved pursuant to regulations promulgated under section 301(d) [involving operating permit programs] and which implements the relevant requirements of this Act.

42 U.S.C. § 7602(q).

implementation plan." 42 U.S.C. § 7604(f)(4) (emphasis added). The use of the term "other" indicates that Congress intended those terms to mean something more than just "emission standards" and "emission limitations." We decline to import the word "emission" into a clause that does not expressly include it. See Cmtys. for a Better Env't, 180 F. Supp. 2d at 1081; see also Conservation Law Foundation v. FHA, 24 F.3d 1465, 1477 n.5 (1st Cir. 1994) ("Defendants' use of the definition for 'emissions standard or limitation' provided in 42 U.S.C. § 7602(k) (a requirement 'established by the State or Administrator') is improper because § 7604(f) defines this term for all of § 7604, trumping the definition in § 7602(k).").[10]

Although we reject the district court and TXU's interpretations of § 7604(f)(4), we need not decide today whether the definition of "emission standard or limitation" is broad enough, by virtue of § 7604(f)(4), to encompass preconstruction requirements because even if that phrase is so defined, we fail to see how TXU could be held to violate those requirements simply by filing an incomplete permit application, in response to which a permit may or may not issue, especially when the permit process is still pending and subject to state judicial review. See Miss. River Revival, 107 F. Supp. 2d at 1015; Freeman, 2005 WL 2837466, at *2. Indeed, the preconstruction requirements set forth in the Texas SIP, such as evidence that the facility will utilize the best available control technology, are preconditions for granting a preconstruction permit, not preconditions for filing a preconstruction permit application. See 30 Tex. Admin. Code § 116.111(a). Presumably, an entity can file as many incomplete permit

---

[10] Moreover, TXU's interpretation would render superfluous another section, § 7604(f)(1), which already defines the phrase "emission standard or limitation" to include an "emission standard" or "emission limitation." See 42 U.S.C. § 7604(f)(1). "It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) (internal quotations and citation omitted); see also Hoffman v. Kramer, 362 F.3d 308, 318 n.7 (5th Cir. 2004).

applications as it so chooses, but that does not mean in doing so, it is violating a preconstruction requirement or an emission standard or limitation. Moreover, the Eleventh Circuit has held, following a long line of district court cases, that "violations of the preconstruction permitting requirements occur at the time of construction." Nat'l Parks & Conservation Ass'n v. TVA, 502 F.3d 1316, 1322 (11th Cir. 2007) (collecting cases and quoting New York v. Niagara Mohawk Power Corp., 263 F. Supp. 2d 650, 661 (W.D.N.Y. 2003)). Here, the facility at issue has not yet begun construction and no permit has been issued. In short, we agree with the district court's ultimate conclusion that under the plain language of § 7604(a)(1), TXU's mere filing of an alleged incomplete permit application does not constitute a violation of an emission standard or limitation under the CAA and, concomitantly, that subject matter jurisdiction is lacking in this case.[11]

To the extent that Appellants argue that jurisdiction under § 7604(a)(1) is implied in this case, "[i]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Assn., 453 U.S. 1, 14-15 (1981). As the Supreme Court has explained, where Congress has provided "elaborate enforcement provisions" for remedying the violation of a federal statute -- as Congress has done with the CAA -- "it cannot be assumed that Congress intended to authorize by implication additional judicial remedies for private citizens suing under [the statute]." Id. at 14 (quoting Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 19 (1979)). Here, Congress and the EPA have set forth an elaborate enforcement scheme through which citizens have an opportunity to participate in public

---

[11] Whether § 7604(a)(1) redresses alleged preconstruction violations against either TXU or the TCEQ once the permit issues and/or construction of the facility commences are issues we need not decide today.

hearings and state court proceedings involving the issuance of any construction permit.  See 42 U.S.C. § 7475(a)(2); see also Approval and Promulgation of Air Quality Implementation Plans; Commonwealth of Virginia--Prevention of Significant Deterioration Program, 61 Fed. Reg. 1880 (Jan. 24, 1996) (to be codified at 40 C.F.R. pt. 52).  It would seem odd then that Congress would simultaneously authorize citizens to bypass this process altogether and seek simultaneous review in federal court.[12]

B.    Whether § 7604(a)(3) authorizes preconstruction citizen suits against facilities that either have obtained a permit or are in the process of doing so?

The district court held that § 7604(a)(3) does not authorize preconstruction citizen suits against facilities that have either obtained a permit or are in the process of doing so.  Instead, the district court interpreted that section as authorizing citizen suits when an entity proposes to construct or constructs a facility without a permit whatsoever.  We agree with the district court's interpretation.  Appellants interpret the phrase "without a permit" to mean "without a permit that complies with the CAA."[13]  However, we decline to rewrite

---

[12] Appellants, citing Title V of the CAA, argue that such dual enforcement is common. Although Title V of the CAA provides for federal judicial review to evaluate the validity of an operating permit, see 42 U.S.C. § 7661d(b)(2), it only does so after the issuance of the permit and the subsequent denial of the aggrieved party's administrative petition for review.  Thus, contrary to Appellants' interpretation, Title V does not provide for simultaneous federal review while the state operating permit process is still ongoing.

[13] Appellants cite legislative history to support their interpretation.  According to the Senate amendment, "Section [7604] . . . is amended to allow a citizen to bring suit to prevent construction of a major emitting facility without a permit in compliance with [various sections of the CAA]."  See H. Conf. Rep. No. 564, at 173 (1977), as reprinted in 1977 U.S.C.C.A.N. 1502, 1553 (emphasis added). Appellants interpret the phrase "without a permit in compliance with the CAA" to mean "without a permit that complies with the CAA."  Thus, according to Appellants, a facility can be deemed to have violated § 7604(a)(3) simply by filing a permit application that fails to comply with the CAA. However, whether the use of word "compliance" in the Senate amendment necessarily means that Congress intended to authorize citizen suits to second-guess state agency permit determinations while those determinations are still pending is far from clear.  Moreover, the subsequent House Conference Report, which concurs

the plain language of the statute. Here, not only has TXU applied for a permit, it has since successfully obtained one, though still subject to state judicial review. Thus, it can hardly be said -- as Appellants must in order for § 7604(a)(3) to apply -- that TXU is proposing to construct or constructing a facility "without a permit." See Ogden Projects v. New Morgan Landfill Co., 911 F. Supp. 863, 867-68 (E.D. Pa. 1996) (indicating that § 7604(a)(3) authorizes citizen suits when facility is proposing to construct plant without a permit at all); see also Heisen v. Pacific Coast Bldg. Prods., Inc., No. 93-16213, 1994 WL 250029, *1 (9th Cir. Jun. 9, 1994) (unpublished) (rejecting attempt to utilize § 7604(a)(3) to collaterally attack issuance of permit by alleging that facility submitted fraudulent information to obtain it). In short, we agree with the district court that § 7604(a)(3) does not authorize preconstruction citizen suits against facilities that have either obtained a permit or are in the process of doing so.

## IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.[14]

AFFIRMED.

---

in the Senate amendment, omits the phrase "in compliance with" altogether and simply states that § 7604(a)(3) is amended so that "citizens suits are authorized against sources to enforce compliance only with respect to . . . any proposal to construct or the construction of any new or modified major emitting facility without a permit under the prevention of significant deterioration provision or the nonattainment provisions." See H. Conf. Rep. No. 564, at 173 (1977), as reprinted in 1977 U.S.C.C.A.N. 1502, 1554 (emphasis added). Thus, the legislative history is less than determinative and far from helpful.

[14] Because we find the district court lacks subject matter jurisdiction in this case, we do not address the remaining justiciability and abstention issues reached by that court.