United States Court of Appeals
For the Eighth Circuit
No. 15-1615

Nucor Steel - Arkansas; Nucor-Yamato Steel Company

*Plaintiffs - Appellants*

v.

Big River Steel, LLC

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Jonesboro

_____

Submitted: January 13, 2016
Filed: June 8, 2016

_____

Before LOKEN, GRUENDER, and KELLY, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Nucor Steel-Arkansas and Nucor Yamato Steel Company (collectively, "Nucor") are sister entities that operate two steel mills near Blytheville in Mississippi County, Arkansas. Big River Steel ("Big River"), a Nucor competitor, has received a permit from the Arkansas Department of Environmental Quality ("ADEQ") to construct a new steel recycling and manufacturing facility in Osceola, Arkansas. Nucor brought a citizen suit in the district court for the Eastern District of Arkansas

under the Clean Air Act ("CAA"), seeking injunctive relief to stop Big River from constructing or continuing to construct the steel mill. The district court[1] dismissed the suit for lack of subject matter jurisdiction. We affirm.

I.

Congress enacted the Clean Air Amendments of the CAA in 1970 as "a comprehensive national program that made the States and the Federal Government partners in the struggle against air pollution." *General Motors Corp. v. United States*, 496 U.S. 530, 532 (1990). The amendments require the Environmental Protection Agency ("EPA") administrator to promulgate national ambient air quality standards ("NAAQS"), and each state develops its own state implementation plan ("SIP") to enforce the NAAQS within the state. *Id.* In 1977, Congress amended the CAA to add the Prevention of Significant Deterioration ("PSD") program. The PSD program created preconstruction requirements for major emitting facilities that obligate them to obtain a permit "setting forth emission limitations" for the facility prior to its construction. 42 U.S.C. § 7475(a)(1). "To qualify for a permit, the facility must not cause or contribute to the violation of any applicable air-quality standard, § 7475(a)(3), and it must comply with emissions limitations that reflect the 'best available control technology' (or BACT) for 'each pollutant subject to regulation under' the Act." *Util. Air Regulatory Grp. v. EPA*, 573 U.S. ---, 134 S. Ct. 2427, 2435 (2014) (quoting 42 U.S.C. § 7475(a)(4)). Under the CAA's cooperative approach, states issue the preconstruction permits in accordance with their SIPs and federal minimum standards. *Sierra Club v. Otter Tail Power Co.*, 615 F.3d 1008, 1011-12 (8th Cir. 2010).

---

[1]The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas.

In 1990, Congress added another permit requirement to the CAA's regulatory scheme, the Title V permit. *Id.* at 1012 (citing 42 U.S.C. § 7661a(a)). These permits generally do not impose any new emission limits but purport to incorporate into a single document all of the CAA requirements governing a facility. *Id.* Like the pre-construction permits, states issue the Title V permits to qualifying facilities. *Id.* (citing 42 U.S.C. § 7661d). Arkansas has delegated its authority to issue pre-construction PSD permits and Title V operating permits in the state to the ADEQ through the Arkansas Water and Air Pollution Control Act. Ark. Code Ann. § 8-4-201. The ADEQ issues these permits together in a combined permit to qualifying entities.

Federal and Arkansas laws both provide avenues for various challenges to the issuance of these permits. Under Arkansas law, any party has thirty days to submit comments on the ADEQ's proposed permit action. Ark. Code Ann. § 8-4-203(e)(1)(B). After the ADEQ releases its final decision, any interested party who previously provided comments on the permit may request a hearing from the Arkansas Pollution Control and Ecology Commission. Ark Code Ann. § 8-4-205(b)(1). A party may appeal an adverse Commission decision to the Arkansas circuit court. Ark. Code Ann. § 8-4-223(a)(1). Federal law provides a similar procedure under the purview of the EPA. Under this procedure, the EPA must review all ADEQ permit issuances and object if any ADEQ permit violates federal regulations. 42 U.S.C. § 7661d(a)(1)(A), (b)(1). If the EPA decides not to object, then citizens may petition it to object. 42 U.S.C. § 7661d(b)(2). If the EPA does not act on a citizen's request, then the citizen may file suit against it. 42 U.S.C. § 7607(b)(1). As a final enforcement safeguard, the CAA allows any person to commence a civil action against anyone who is alleged to have violated or is in violation of an emission standard or limitation. 42 U.S.C. § 7604(a)(1).

Turning to the facts of the instant case, Big River is building a steel mill in Osceola, Arkansas. It sought a preconstruction PSD permit for this mill from the

ADEQ in order to comply with the CAA. During this process, Nucor submitted comments to the ADEQ advocating against the issuance of Big River's permit. Nevertheless, the ADEQ issued a combined preconstruction PSD permit and Title V operating permit to Big River. Nucor sought review from the Arkansas Pollution Control & Ecology Commission of the ADEQ's grant of Big River's permit. As a result, an administrative-hearing officer held a four-day evidentiary hearing and rendered a 71-page opinion to the Commission that recommended affirming the permit's issuance. Over Nucor's objection, the Commission adopted the hearing officer's recommendation and affirmed the grant of the preconstruction PSD permit. Nucor appealed the Commission's finding to the Arkansas Circuit Court and then the Arkansas Court of Appeals. The Arkansas Court of Appeals affirmed the Commission's decision. *See Nucor Steel Ark. v. Ark. Pollution Control & Ecology Comm'n*, 478 S.W.3d 232 (Ark. 2015).

Nucor also raised a challenge to the ADEQ's issuance of the Title V operating permit to the EPA. Nucor petitioned the EPA Administrator to object to the issuance of Big River's Title V permit; however, the EPA did not respond to Nucor's petition and did not object. Nucor then filed suit in the United States District Court for the District of Columbia to compel the EPA to answer the petition. That case remains pending. *See Nucor Steel Ark. v. McCarthy*, 1:14CV00199 (D.C. Dist. filed Feb. 11, 2014).

In its most recent effort, Nucor filed a citizen suit under the CAA in the United States District Court for the Eastern District of Arkansas. The suit alleged that Big River's permit was invalid and that the continued construction of the steel mill thus violates the CAA and PSD regulations. For relief, Nucor sought to enjoin Big River from constructing or continuing to construct the steel mill. Big River moved to dismiss Nucor's citizen suit on several grounds, including that the district court lacked subject matter jurisdiction. The district court concluded that Nucor's suit amounted to a collateral attack on a facially valid air permit and that the CAA did not authorize

such an attack. Accordingly, the district court dismissed Nucor's suit for lack of subject matter jurisdiction. Nucor now appeals.

## II.

We review *de novo* a district court's determination that it lacks subject matter jurisdiction. *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 347 (8th Cir. 2007). During review of a facial attack on jurisdiction, "[w]e must accept all factual allegations in the pleadings as true and view them in the light most favorable to the nonmoving party." *A.J. ex rel. Dixon v. UNUM*, 696 F.3d 788, 789 (8th Cir. 2012) (per curiam) (quoting *Great Rivers Habitat All. v. Fed. Emergency Mgmt. Agency*, 615 F.3d 985, 988 (8th Cir. 2010)); *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990).

This case calls us to examine several inter-related issues. First, we must address Nucor's contention that the district court erred by failing to consider whether Big River's alleged violations of the Arkansas SIP constituted a challenge to an "emission standard or limitation" required to support a citizen suit under 42 U.S.C. § 7604(a)(1). Second, we must determine whether the district court erred when it found that it lacked jurisdiction under 42 U.S.C. § 7604(a)(3), given Nucor's allegations that Big River violated the pre-conditions and requirements to obtain the permit required under the PSD provisions of 42 U.S.C. § 7475(a) and required for Big River to begin construction. Third, we must consider Nucor's assertion that the district court erred by holding the Big River Permit "facially valid" under the CAA where the Arkansas SIP did not contain EPA-approved $PM_{2.5}$ provisions.[2] Finally, we must decide whether the district court erred by barring Nucor's Title I PSD claims based on EPA's Title V review process.

---

[2]$PM_{2.5}$ refers to particulate matter with a diameter of 2.5 microns or less.

-5-

A.

Nucor first argues that the district court erred by failing to consider whether Big River's alleged violations of the Arkansas SIP constituted a challenge to an "emission standard or limitation" required to support a citizen suit under 42 U.S.C. § 7604(a)(1). As resolution of most of Nucor's arguments depends on interpretation of the CAA's citizen-suit provisions, "[w]e begin our inquiry with the language of the statute." *Otter Tail*, 615 F.3d at 1014. The first citizen-suit provision at issue here states:

> Except as provided in subsection (b) of this section, any person may commence a civil action on his own behalf--
>
> (1) against any person . . . who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this chapter . . . .

42 U.S.C. § 7604(a)(1). On its face, (a)(1) establishes two types of conduct animating a citizen suit. First, a person may allegedly have violated an emission standard or limitation *in the past*, provided that evidence shows the violation was repeated. Alternatively, a person may allegedly be in *ongoing* violation of an emission standard or limitation.

The statute then goes on to define the "emission standard or limitation under this chapter" to which § 7604(a)(1) refers:

> (f) For purposes of this section, the term "emission standard or limitation under this chapter" means--
>
> (4) any other standard, limitation, or schedule established under any permit issued pursuant to subchapter V of this chapter *or* under any applicable State implementation plan approved by the Administrator,

> any permit term or condition, and any requirement to obtain a permit
> as a condition of operations.

42 U.S.C. § 7604(f).

Big River does not dispute that § 7604(f)(4) encompasses the provisions of the Arkansas SIP. Indeed, this and other circuits have held that § 7604(f)(4) contemplates state SIPs. *Save Our Health Org. v. Recomp of Minn., Inc.*, 37 F.3d 1334, 1336 (8th Cir. 1994) (conferring citizen-suit jurisdiction once a plaintiff alleges the repeated violation of an emission standard, even if "[t]he emission standard the plaintiffs claimed [defendant] violated was the EPA approved . . . SIP"); *see also McEvoy v. IEI Barge Servs., Inc.*, 622 F.3d 671, 676 (7th Cir. 2010); *CleanCOALition v. TXU Power*, 536 F.3d 469, 474-75 (5th Cir. 2008). Taking (a)(1) and (f)(4) together, then, "the statute permits citizen enforcement of standards found in an SIP," such that the SIP provides "an alternate legal basis for suit" in addition to suit directly under the permit. *McEvoy*, 622 F.3d at 676. The plain language of the statute nevertheless demands that any past violation animating a suit under (a)(1) must be repeated or ongoing—a one-time violation will not suffice. 42 U.S.C. § 7604(a)(1); *see also Save Our Health*, 37 F.3d at 1337.[3]

---

[3]Big River cites to *McEvoy* to urge us to support this result by importing the "continuous basis" requirement from § 7602(k), the part of the CAA's definitions section that defines "emission limitation" and "emission standard"; however, doing so would misinterpret *McEvoy*'s reasoning. There, the Seventh Circuit used the § 7602(k) definition of "emission standard" or "emission limitation" to interpret the meaning of those terms in § 7604(f)(1) because, *unlike* § 7604(f)(4), which "stands on its own legs" and "uses terms that are not defined in § 7602(k)," § 7604(f)(1) uses terms that *are* defined in § 7602(k). *McEvoy*, 622 F.3d at 675-76. Additionally, the "continuous basis" in § 7602(k) refers to the nature of the *regulation*, not to the nature of the *violation*: the "emission standards" or "emission limitations" must "limit[] the quantity, rate, or concentration of emissions or air pollutants on a continuous basis." Here, however, the requirement of a repeated or ongoing violation flows directly from the text of § 7604(a)(1).

Here, all of Nucor's allegations relate to one-time permitting requirements under either the CAA's PSD requirements or the Arkansas SIP. Indeed, Nucor itself characterizes each of the counts and associated factual allegations in its complaint as "constitut[ing] allegations that B[ig River] *violated* the Arkansas SIP," with Nucor's use of the past tense indicating that any alleged violation has ceased. Additionally, all of Nucor's SIP-related counts refer to BACT requirements, which we previously have held are "best understood as . . . incorporated into a facility's construction plans and PSD permits, not as establishing an ongoing duty to apply BACT independent of the permitting process." *Otter Tail*, 615 F.3d at 1017. Taking the facts as alleged, even though Nucor's allegations that Big River violated the Arkansas SIP present a challenge to an "emission standard or limitation" as that term is defined in 42 U.S.C. § 7604(f)(4), Nucor has not alleged the repeated or ongoing violations necessary to support a citizen suit under § 7604(a)(1). Accordingly, the district court did not err by concluding that it lacked jurisdiction under § 7604(a)(1). *See Save Our Health*, 37 F.3d at 1336.

B.

Big River next argues that the district court erred by finding that it lacked jurisdiction under 42 U.S.C. § 7604(a)(3) over Nucor's allegation that Big River violated the requirements to obtain its preconstruction PSD permit. Big River already has received a joint PSD and Title V permit; therefore, whether Nucor's claims against Big River establish a right of action under 42 U.S.C. § 7604(a)(3) turns on whether the scope of construction "without a permit" includes construction with an allegedly defective PSD permit. The text of § 7604(a)(3) states:

Except as provided in subsection (b) of this section, any person may commence a civil action on his own behalf--

(3) against any person who proposes to construct or constructs any new or modified major emitting facility without a permit required under part

-8-

C of subchapter I of this chapter (relating to significant deterioration of air quality) . . . or who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of any condition of such permit.

42 U.S.C. § 7604(a)(3). Accordingly, (a)(3) provides for jurisdiction over a citizen suit when a defendant "proposes to construct or constructs" a new or modified major emitting facility "without a permit required under part C," when a defendant has engaged in a repeated past violation of permit terms, or when a defendant is engaged in an ongoing current violation of permit terms. Part C then provides:

No major emitting facility . . . *may be constructed* in any area to which this part applies unless--

(1) a permit has been issued for such proposed facility in accordance with this part setting forth emission limitations for such facility which conform to the requirements of this part . . . .

42 U.S.C. § 7475(a)(1) (emphasis added). Part C thus sets forth limitations on construction, first among them the requirement that a party may not construct a major emitting facility unless he first has received a permit that sets forth emission limitations that conform with part C. Therefore, in order to receive such a permit, a party must make a satisfactory showing to the permitting authority as to the requirements described in § 7475(a)(2)-(8). The requirements of § 7475(a) are squarely tied to construction—that is, they outline events and showings that must occur in order for construction to begin. "Even though the preconstruction permitting process may establish obligations which continue to govern a facility's operation after construction, that does not necessarily mean that such parameters are enforceable independent of the permitting process." *Otter Tail*, 615 F.3d at 1017.

Here, although ADEQ issued Big River a permit, Nucor alleges that Big River failed to meet the standards set forth in § 7475(a), thereby rendering Big River's PSD

permit invalid. The district court rightly noted that such an argument would mean that § 7604(a)(3) authorizes a citizen suit against anyone who proposes to construct or constructs a major emitting facility, even if that person already has obtained a permit issued by the appropriate regulatory authority pursuant to part C, as long as the plaintiff alleges that the person failed to meet the requirements of § 7475(a). Such an argument amounts to a collateral attack on a permit, rather than the protection against unpermitted construction that § 7604(a)(3) purports to provide. Nucor's claim as pleaded thus would result in construing § 7475(a) as setting forth requirements that must be met *in addition* to obtaining the permit, rather than as requirements that must be met *in order* to obtain the permit. In other words, Nucor urges us to interpret "without a permit" to mean "without a permit that complies with the CAA," an interpretation that the Fifth Circuit already has rejected. *See CleanCOALition*, 536 F.3d at 478-79. Like the Fifth Circuit, we "decline to rewrite the plain language of the statute" to encompass Nucor's collateral attack. *See id.* at 479. The proper means for such an attack lies in the state judicial review Nucor already sought, *see* 40 C.F.R. § 70.4(b)(3)(x)—review that upheld Big River's permit in its entirety. *See Nucor Steel Ark.*, 478 S.W.3d 232. Accordingly, the district court did not err by finding it lacked jurisdiction under 42 U.S.C. § 7604(a)(3) to entertain Nucor's allegations that Big River did not meet the requirements to obtain the PSD permit needed to begin construction.

## C.

Nucor next argues that the district court erred by holding Big River's permit "facially valid." However, this argument is misleading, as the district court did not issue any holding with respect to the validity of Big River's permit. Rather, the court merely noted that the CAA does not authorize a collateral attack on a facially valid state permit—stated another way, § 7604(a)(3) does not authorize preconstruction citizen suits against parties that either have obtained a permit or are in the process of doing so. Indeed, as stated in part B, Nucor's remedies lie elsewhere.

-10-

Nucor also argues that, in any event, Big River's permit could not have been "facially valid" because the Arkansas SIP had not yet incorporated updated $PM_{2.5}$ terms pursuant to current EPA requirements. Nucor claims that the ADEQ did not have authority to issue a federally enforceable permit under § 7475(a) before the Arkansas SIP incorporated the updated $PM_{2.5}$ terms because the EPA permitting requirements are self-executing. This argument, too, misses the mark.

Congress vested the EPA with broad oversight over the CAA "to ensure that PSD permits comply with statutory requirements . . . even where a State administers a Part C permitting program pursuant to an approved SIP." *Texas v. EPA*, 726 F.3d 180, 188 (D.C. Cir. 2013). However, the requirements of § 7475(a) represent "self-executing permitting requirements" only "with respect to *newly regulated* pollutants." *Id.* at 192 (emphasis added). The $PM_{2.5}$ at issue here is not a newly regulated pollutant, as the EPA has regulated it under the CAA since 1997. For non-self-executing permitting requirements, "[w]here a State fails to act or submits a SIP that does not meet minimum requirements of the Act, Congress required [the] EPA to issue a [federal implementation plan] . . . to implement emission requirements within that State and maintain federal standards." *Id.*; 42 U.S.C. § 7410(c)(1).[4] The remedy for any deficiency in the Arkansas SIP thus fell within the purview of EPA oversight—not Nucor's oversight through the citizen-suit provisions of the CAA. In sum, the district court did not err by finding that the CAA does not authorize a preconstruction citizen suit against a party that already has obtained a permit.

---

[4]In fact, the EPA had issued a rule (79 F.R. 29354-01, effective May 22, 2014) finding the Arkansas SIP insufficient with respect to $PM_{2.5}$ and starting the 24-month clock for issuance of a federal implementation plan. Arkansas subsequently submitted, and EPA proposed to approve, a new SIP.

Finally, Nucor argues that the district court erred by barring Nucor's Title I PSD claims based on the EPA's Title V review process. This argument, too, fails. In *Otter Tail*, our court considered whether a modification to a plant made the plant a "new source" subject to New Source Performance Standard ("NSPS") limits. 615 F.3d at 1019. We affirmed the district court's dismissal of the plaintiff's claim as an impermissible collateral attack on the plant's Title V operating permit. *Id.* at 1019-21. We did so by reasoning that the plaintiff should have raised the claim administratively during the review period for the application to modify the permit to authorize the plant modification. *Id.* Such an objection would have enabled the Sierra Club to obtain judicial review in the court of appeals under § 7607(b)(1); however, Sierra Club failed to object. *Id.* Because § 7607(b)(2) precludes judicial review of EPA action "with respect to which review could have been obtained" under § 7607(b)(1), the district court determined that it lacked subject matter jurisdiction over the NSPS claim. *Id.*

*Otter Tail*'s reasoning turns on the notion of action "with respect to which review could have been obtained." Section 7661d(b)(1) of the CAA enables the EPA to object of its own accord to any proposed Title V permit: "If any permit contains provisions that are determined by the Administrator as not in compliance with the applicable requirements of this chapter, including the requirements of an applicable implementation plan, the Administrator shall, in accordance with this subsection, object to its issuance." 42 U.S.C. § 7661d(b)(1). If the EPA does not object, "any person may petition the Administrator within 60 days after the expiration of the 45-day review period . . . to take such action." § 7661d(b)(2). Then, "[a]ny denial of such petition shall be subject to judicial review" in the courts of appeals pursuant to § 7607(b)(1). *Id.* In turn, any "[a]ction of the Administrator with respect to which review could have been obtained under [§ 7607(b)(1)] shall not be subject to judicial review in civil or criminal proceedings for enforcement." § 7607(b)(2).

Here, Arkansas has integrated its Title I and Title V permitting requirements, as allowed by the EPA under 57 F.R. 32259, and this integration "includ[es] opportunity for EPA and . . . state review." 57 F.R. 32259. Accordingly, Nucor's objections to the Title I (PSD) permit amount to objections to the unified permit and "could have been pressed during the permitting process." *See Otter Tail*, 615 F.3d at 1020. Nucor's remedy thus lies in petitioning the EPA, as Nucor already has done. Although the EPA has not ruled on the petition, its eventual decision represents an action "with respect to which review could have been obtained" under § 7607(b)(1). *See id.* at 1021; *see also Romoland Sch. Dist. v. Inland Empire Energy Ctr., LLC*, 548 F.3d 738, 755 (9th Cir. 2008). Therefore, judicial review via the enforcement proceedings Nucor has brought in the district court are inappropriate. The district court did not err in barring Nucor's Title I claims based on the availability of Title V review. *See Romoland*, 548 F.3d at 756 (holding that a claim that the terms of an integrated permit are inconsistent with other CAA requirements may only be brought in accordance with the judicial review procedures authorized by 42 U.S.C. § 7661-7661f, and may not be brought in federal district court under 42 U.S.C. § 7604's citizen-suit provisions).

### III.

For the reasons set forth above, we affirm.

_____