# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3183

_____

Great Rivers Habitat Alliance;　*
The Adolphus A. Busch Revocable　*
Living Trust,　*
　*
　*
Appellants,　*
　*　Appeal from the United States
v.　*　District Court for the
　*　Eastern District of Missouri.
Federal Emergency Management　*
Agency; Department of Homeland　*
Security; William R. Blanton, Jr.,　*
Chief, Engineering Management　*
Branch, Mitigation Directorate,　*
　*
Appellees.　*

_____

Submitted: April 15, 2010
Filed: August 12, 2010

_____

Before RILEY, Chief Judge, COLLOTON and BENTON, Circuit Judges.

_____

RILEY, Chief Judge.

Great Rivers Habitat Alliance (Great Rivers) and the Adolphus A. Busch Revocable Living Trust (Busch Trust) (collectively, appellants) appeal the dismissal

of their case for lack of jurisdiction. The district court[1] found appellants failed to exhaust their administrative remedies before the Federal Emergency Management Agency (FEMA) pursuant to the National Flood Insurance Act of 1968 (NFIA), 42 U.S.C. § 4001 et seq. and further found the judicial review provisions of the Administrative Procedure Act (APA), 5 U.S.C. § 701 et seq. did not apply. Appellants argue the case was dismissed in error because they had in fact exhausted their administrative remedies, and in any event should be allowed to proceed under the APA. We affirm.

## I.    BACKGROUND

Finding the private insurance industry could not economically "make flood insurance available to those in need of such protection on reasonable terms and conditions," Congress enacted the NFIA to "authorize a flood insurance program by means of which flood insurance . . . [could] be made available on a nationwide basis through the cooperative efforts of the Federal Government and the private insurance industry" and to provide flexibility in the program. 42 U.S.C. §§ 4001(b), (d). Congress therefore authorized FEMA to create and establish the National Flood Insurance Program (NFIP). See § 4011(a).

The NFIP is FEMA's regulatory implementation of the NFIA. FEMA "is required to identify flood-prone areas, publish flood-risk-zone data, and revise that data as needed. Any federally regulated lender making a loan secured by improved real estate located in a designated flood-risk zone must as a condition of making the loan require the purchase of insurance through the [NFIP]." Paul v. Landsafe Flood Determination, Inc., 550 F.3d 511, 513 (5th Cir. 2008) (internal citation omitted). As part of the NFIP, FEMA publishes Flood Insurance Rate Maps (FIRM), which are

---

[1]The Honorable David D. Noce, United States Magistrate Judge for the Eastern District of Missouri, presiding with the consent of the parties pursuant to 28 U.S.C. § 636(c).

official maps of communities "delineat[ing] both the special hazard areas and the risk premium zones applicable to the community."  44 C.F.R. § 59.1.  The FIRMs are then used to assess premiums for flood insurance policies regulated by the NFIP.

Occasionally, a FIRM must be updated.  When this is necessary, FEMA issues a Letter of Map Revision (LOMR), which is a

> modification to an effective [FIRM] . . . .  LOMRs are generally based on the implementation of physical measures that affect the hydrologic or hydraulic characteristics of a flooding source and thus result in the modification of the existing regulatory floodway, the effective base flood elevations, or the [Special Flood Hazard Area].  The LOMR officially revises the FIRM . . . and, when appropriate, includes a description of the modifications.

44 C.F.R. § 72.2.

On December 29, 2006, the City of St. Peters, Missouri (St. Peters), requested a LOMR from FEMA, seeking to remove a tract of land from the Mississippi River floodplain.  St. Peters's LOMR request was based upon the completion of the Premier 370 Business Park and Lakeside 370 Levee District.  According to the request, a new levee, built as part of the project, protected the area from a 500-year flood.  In the parlance of the NFIP, St. Peters requested a zone change from its then-current AE Zone (100-Year Flood Zone) to an X Zone (500-Year Flood Zone, or 100-Year Flood Zone protected by a flood control structure).

In considering St. Peters's request for a LOMR, FEMA apparently expressed concern about the levee's closure structures and its ability to protect against either a 100-year or 500-year flood. Nevertheless, on June 13, 2008, FEMA issued a proposed LOMR reflecting the changes and published it twice in a local newspaper and once in the Federal Register.  On September 29, 2008, appellants sent St. Peters a letter challenging the proposed LOMR, pointing to alleged deficiencies in the levee,

particularly its closure structure and the level of its freeboard. On October 10, 2008, St. Peters forwarded appellants' letter to FEMA along with St. Peters's comments. St. Peters commented, among other things, that appellants' letter did not constitute an appeal because it lacked required scientific or technical data. FEMA determined modifications to the LOMR were unwarranted, and the LOMR became effective on October 30, 2008, thereby revising the FIRM.

On December 23, 2008, appellants sued FEMA; the Department of Homeland Security; and William R. Blanton, Jr., Chief for the Engineering Management Branch of the Risk Analysis Division in FEMA's Mitigation Directorate (collectively, appellees), praying for the district court to (1) declare FEMA based its LOMR decision upon flawed scientific and technical information and upon an inadequately designed and constructed levee; (2) vacate FEMA's LOMR determination; (3) permanently enjoin FEMA from issuing the LOMR until St. Peters's levee meets NFIA standards; and (4) award appellants fees and costs. Appellants alleged the levee did not meet FEMA's requirements and therefore FEMA's decision to issue the LOMR was arbitrary and capricious, in violation of the NFIA and APA. Appellees moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), arguing the district court lacked subject matter jurisdiction under any of the cited statutes. The district court granted appellees' motion and dismissed appellants' complaint, holding appellants had not exhausted their remedies under the NFIA and the APA did not apply because the NFIA provided an adequate remedy.

## II. DISCUSSION
### A. Standard of Review

"We review de novo the grant of a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)." Hastings v. Wilson, 516 F.3d 1055, 1058 (8th Cir. 2008) (quoting OnePoint Solutions, LLC v. Borchert, 486 F.3d 342, 347 (8th Cir. 2007)) (quotation marks omitted). "We must accept all factual allegations in the pleadings as true and view them in the light most favorable to the nonmoving party."

Id. The burden of proving federal jurisdiction, however, is on the party seeking to establish it, and "[t]his burden may not be shifted to" the other party. Newhard, Cook & Co. v. Inspired Life Ctrs., Inc., 895 F.2d 1226, 1228 (8th Cir. 1990).

### B. Sovereign Immunity

Appellants' claims in this case are against agencies of the United States government. As the sovereign, the United States of America enjoys immunity from suit, absent a waiver. See F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994). The NFIA contains two limited waivers of sovereign immunity based upon the subject matter of the suit. The NFIA waives FEMA's sovereign immunity for challenges to the agency's disallowance of all or part of a flood insurance claim. See 42 U.S.C. § 4072. In addition, the NFIA allows federal court challenges to FEMA's flood elevation determinations. See 42 U.S.C. § 4104(g) ("Any appellant aggrieved by any final determination of the Director upon administrative appeal . . . may appeal such determination to the United States district court for the district within which the community is located . . . ."). Disallowance of a flood insurance claim is not at issue in this appeal and therefore § 4072 does not apply. Because appellants alternatively argue their claims may be reviewed under either the NFIA or the APA, our first task is to resolve whether FEMA's revision of the FIRM constitutes a flood elevation determination.

The APA waives sovereign immunity as to suits seeking judicial review where such review has not been expressly authorized by statute, except when either the statute precludes judicial review or "agency action is committed to agency discretion by law." See 5 U.S.C. § 701(a). It is undisputed that decisions on base flood elevations (BFE) are committed to FEMA's discretion. Appellants contend this means if we "were to hold that § 4104(g) of the NFIA governs only appeals of flood elevation determinations, then judicial review of FEMA's determination to remove a tract of land from the floodplain is reviewable under the [APA]." Our review of the record reveals FEMA's action was in fact a flood elevation determination.

## C.    APA Claim

In order to determine whether FEMA's decision to issue the LOMR is a flood elevation determination, we first review the structure of the NFIP. A "flood elevation determination" is "a determination by the Federal Insurance Administrator of the water surface elevations of the base flood, that is, the flood level that has a one percent or greater chance of occurrence in any given year." 44 C.F.R. § 59.1. A "base flood elevation" is a measurement of "the potential water level height during a base flood." Colum. Venture LLC v. S.C. Wildlife Fed'n, 562 F.3d 290, 292 (4th Cir. 2009). Turning to FEMA's LOMR, we recognize the revisions to the FIRM involve a decrease in flood zone from Zone AE to Zone X. Zone AE is an "[a]rea of special flood hazard," which is "land in the flood plain within a community subject to a 1 percent or greater chance of flooding in any given year." 44 C.F.R. § 59.1. The parties agree "Zone X" means a "500 Year Flood Zone, or areas protected from the 100 Year Flood Zone by a flood control structure."

Because moving land from Zone AE to Zone X is a flood elevation determination, the case was properly litigated under the NFIA, and not the APA. By definition, land in Zone X has a base flood elevation of zero, because it is protected from the base flood by either its nature or by a flood control structure. FEMA's act of revising the FIRM to move land from Zone AE to Zone X is functionally identical to adjusting the base flood elevation from its previous level to zero. This adjustment is assuredly a flood elevation determination which may be reviewed pursuant to 42 U.S.C. § 4104(g). Because the APA only grants judicial review of final agency action in cases "for which there is no other adequate remedy in a court," 5 U.S.C. § 704, the district court did not err in dismissing appellants' APA claim, because 42 U.S.C. § 4104(g) provides an adequate legal remedy.

## D.    NFIA Claim

Before challenging a flood elevation determination in federal court, a party must first take an administrative appeal of FEMA's determination. See § 4104(b) ("During

the ninety-day period following the second publication [of flood elevation determinations by FEMA], any owner or lessee of real property within the community who believes his property rights to be adversely affected . . . may appeal such determination to the local government."). However,

> The sole basis for such appeal shall be the possession of knowledge or information indicating that the elevations being proposed by [FEMA] with respect to an identified area having special flood hazards are scientifically or technically incorrect, and the sole relief which shall be granted under the authority of this section in the event that such appeal is sustained . . . is a modification of the . . . proposed determination accordingly.

Id. The district court agreed with FEMA that appellants did not adequately, if at all, provide scientific or technical evidence and therefore did not file an "appeal" with the agency within the meaning of the NFIA, leaving no final agency judgment upon which to ground § 4104(g) jurisdiction. The jurisdictional question can therefore be reduced to whether appellants challenged FEMA's decision on the basis of the decisions' scientific or technical accuracy in accordance with § 4104(b).

In order to appeal a determination on the basis of scientific or technical accuracy, FEMA's regulations require supporting documentation.

> If an appellant believes the proposed base flood elevations are technically incorrect due to a mathematical or measurement error or changed physical conditions, then the specific source of the error must be identified. Supporting data must be furnished to FEMA including certifications by a registered professional engineer or licensed land surveyor, of the new data necessary for FEMA to conduct a reanalysis.

44 C.F.R. § 67.6(b)(1). Similarly, allegations that proposed BFEs are technically incorrect due to alleged error in applying hydrologic, hydraulic, or other methods, or use of inferior data, must provide certification from an engineer or surveyor. See 44

C.F.R. § 67.6(b)(2)(v). "Technically incorrect" means "[t]he methodology . . . utilized has been erroneously applied due to mathematical or measurement error, changed physical conditions, or insufficient quantity or quality of input data." 44 C.F.R. § 59.1.

Appellants did not point to any mathematical or measurement error, changed physical conditions, or lack of sufficient quality data to support the allegations in their letter to St. Peters.[2] Instead, appellants contested FEMA's decision to grant the LOMR generally on two grounds—the levee lacked a closure structure and the sufficiency of freeboard. The district court found the exhibits appellants submitted in support of the closure plan issue consisted of "nothing but blanket conclusions and recommendations." We agree. Regarding the freeboard issue, the district court found the evidence submitted was supported by only one exhibit that contained any technical data, and that table of data was provided by FEMA. Appellants argue (1) the information submitted by FEMA's technical consultant is "technical"; (2) appellants were not required to demonstrate the inaccuracy of the proposed BFEs; (3) FEMA cannot lawfully impose a requirement that appellants certify information submitted by FEMA; and (4) their submissions satisfy the NFIA's appeal requirements.

We agree with the district court that appellants' challenge was not based upon the scientific or technical accuracy of the LOMR, and thus did not constitute an appeal within the meaning of 44 C.F.R. § 67.6. A review of the relevant documents supports our position. For example, the Baker Geotechnical Engineering Reviews are nothing more than executive summaries of findings and proposed courses of action, not

---

[2]Nor did appellants' filing challenge the BFE as scientifically incorrect. "Scientifically incorrect" means "[t]he methodology . . . or assumptions which have been utilized are inappropriate for the physical processes being evaluated or are otherwise erroneous." 44 C.F.R. § 59.1. An appeal of the proposed BFE asserting FEMA's calculation is scientifically incorrect must, among other things, "[p]rovid[e] technical support indicating why the appellant's methods should be accepted as more correct." 44 C.F.R. § 67.6(b)(3)(iv).

-8-

technical information FEMA could use to reevaluate its decision. Even if it is true appellants are not required to demonstrate the inaccuracy of the elevations, as appellants suggest, the requirement of new technical information exists so FEMA may reevaluate its conclusions when new data is offered. FEMA is not required to rehash data it already reviewed upon the chance FEMA would change its decision. Because appellants offered no new data, we need not decide which party bears the burden of showing inaccuracies in the elevations.

The NFIP does not invite motions for reconsideration. Where FEMA's regulations require new certified technical information, this is not a command to certify the existing information in FEMA's files. Rather, the regulations require appellants to certify *new* information so FEMA can conduct another analysis. This is precisely what appellants failed to do in this case. Instead, appellants attempt to force FEMA to reanalyze the existing data, hoping for a different result, without submitting any new certified technical data showing the first analysis contained mathematical or measurement errors, or physical conditions have changed. Because appellants did not submit new scientific or technical information, and what they did submit was not certified by an engineer or surveyor, appellants are relying on nothing but the data in FEMA's files. The district court correctly concluded it lacked jurisdiction because appellants failed to exhaust their administrative remedies by filing a proper appeal with FEMA.

## III.    CONCLUSION
We affirm the district court's judgment.

_____