# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1604

_____

|  |  |  |
|---|---|---|
| Bonita A. Hart, as Personal Representative of the Estate of Kenneth M. Block, Deceased, | * * * * | |
| Appellant, | * * | Appeal from the United States |
| v. | * * | District Court for the District of South Dakota. |
| United States of America, | * * | |
| Appellee. | * | |

_____

Submitted: October 22, 2010
Filed: January 11, 2011

_____

Before RILEY, Chief Judge, MELLOY and GRUENDER, Circuit Judges.

_____

RILEY, Chief Judge.

Bonita Hart brought this wrongful death action under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671-80, against the United States. Hart asserted that a Bureau of Indian Affairs (BIA) law enforcement officer failed adequately to supervise, secure, and detain her son, Kenneth Block, after Block's arrest for federal sex crimes, resulting in Block's suicide. The district court[1] *sua sponte* dismissed

_____

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

Hart's complaint for lack of subject matter jurisdiction, holding the discretionary function exception, 28 U.S.C. § 2680(a), to the FTCA's general waiver of sovereign immunity, 28 U.S.C. § 1346(b), barred Hart's claims. Hart appeals, and we affirm.

## I.  BACKGROUND
### A.  Undisputed Facts[2]

In March 2006, BIA Special Agent Lawrence Robertson (S/A Robertson) interviewed Block in Sisseton, South Dakota. Three girls under the age of sixteen each reported they had sexual encounters with Block, who was then twenty years old. After initially denying the girls' allegations, Block confessed. Block informed S/A Robertson "that, when the time came, [Block] would go with [S/A Robertson] rather than being taken in handcuffs."

In April 2006, a federal grand jury returned a three-count indictment against Block. Each count alleged sexual abuse of a minor in Indian country, in violation of 18 U.S.C. §§ 1153, 2243(a) and 2246(2)(A). A warrant for Block's arrest issued.

On April 25, 2006, S/A Robertson went to the home of Block's parents near Sisseton, arriving around 5:45 p.m. Block's eight-year-old brother was playing outside. S/A Robertson asked Block's brother to get Block. When Block arrived, S/A Robertson invited Block into S/A Robertson's car.

After shaking hands and exchanging pleasantries, S/A Robertson advised Block of the indictment and told Block an initial appearance was scheduled the next day. Block smiled and remained friendly the entire time the two men were talking. Block did not display any erratic or bizarre behavior, nor did Block appear distraught or depressed. S/A Robertson had no reason to believe Block was suicidal.

---

[2]The United States submitted a statement of undisputed material facts, and Hart did not dispute these recited facts.

S/A Robertson inquired whether someone was available to care for Block's younger brother, and Block told S/A Robertson a relative would arrive shortly. Block asked S/A Robertson for permission to return to the house and finish cleaning up his bedroom, pointing to a window on the second floor and assuring S/A Robertson he would "be right out." S/A Robertson agreed, and Block returned to the house. S/A Robertson informed his dispatcher he would soon be transporting Block to jail.

From his car, S/A Robertson watched Block moving around his bedroom. Block appeared to be cleaning. When Block moved out of S/A Robertson's view, S/A Robertson told Block's brother to go into the home and "tell Kenny to hurry." The brother quickly returned and said Block "would be right out." S/A Robertson then heard a gunshot.

S/A Robertson found Block's lifeless body behind the house. Block had shot himself in the head with a Remington 30.06 rifle. The entire encounter between S/A Robertson and Block lasted less than ten minutes.

### B. Handbook

At all relevant times, the BIA Office of Law Enforcement Services' Law Enforcement Handbook (Handbook) governed S/A Robertson's conduct. The Handbook recognizes:

> Officers may be confronted with situations where control must be exercised to effect arrests, overcome physical resistance, and neutralize assaults. Control may be achieved through persuasion, verbal warnings, implied or threatened use of force, or by the use of physical force. There are varying degrees of physical force that may be justified depending on the dynamics of the situation.

The Handbook "authorizes officers to use only the level of physical force which is *necessary, reasonable and appropriate* for achieving the desired legal objective" and

tasks officers with the responsibility for "assessing each situation and using only the levels of control or physical force which are ***necessary, reasonable and appropriate***" under the circumstances. The Handbook also states, "Officers employ the use of control or physical force ***at the lowest level*** deemed necessary to achieve the objective."

The Handbook "establishes guidelines for contact with civilians, victims, suspects, arrestees, and prisoners." With respect to the use of restraint devices, the Handbook specifically provides:

> The responsibility of an officer for the safe custody of his prisoner permits some discretion in the use of handcuffs and restraining devices. The [BIA] requires officers to exercise safety awareness by carefully restraining most prisoners who must be transported to a jail or other location.

### C. Prior Proceedings

In October 2008, after exhausting all administrative remedies, Hart filed a two-count complaint against the United States under the FTCA. Count I alleges negligence, asserting S/A Robertson failed adequately to supervise, secure, and detain Block, resulting in Block's suicide. Count II asserts a violation of South Dakota's wrongful death statute, S.D.C.L. ch. 21-5, and seeks more than $2 million in compensatory damages for loss of society and companionship.

In August 2009, the United States moved for summary judgment, see Fed. R. Civ. P. 56, proffering various reasons why Hart's claims failed under governing South Dakota common and statutory law. In September 2009, Hart resisted the government's motion, likewise focusing upon South Dakota law. Neither party discussed the district court's jurisdiction.

In February 2010, the district court dismissed Hart's complaint with prejudice and denied the government's motion for summary judgment as moot. The court *sua sponte* held it lacked subject matter jurisdiction, because the United States had not waived sovereign immunity. The court held as a matter of law that the discretionary function exception to the general waiver of sovereign immunity in the FTCA applied.

## II.    DISCUSSION
### A.    Standard of Review

We review de novo a district court's decision to dismiss a complaint for lack of subject matter jurisdiction. See Great Rivers Habitat Alliance v. FEMA, 615 F.3d 985, 988 (8th Cir. 2010).

### B.    Analysis
#### 1.    Sovereign Immunity/Discretionary Function Exception

The relevant law of sovereign immunity, which the district court correctly summarized, is clear:

> The United States is immune from suit unless it consents. Congress waived the sovereign immunity of the United States by enacting the FTCA, under which the federal government is liable for certain torts its agents commit in the course of their employment.

> The United States is, nevertheless, immune if an exception applies. Under 28 U.S.C. § 2680(a), the FTCA does not waive immunity for "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

> A two-part test determines when the discretionary function exception applies. First, the conduct at issue must be discretionary, involving an element of judgment or choice. The second requirement is that the judgment at issue be of the kind that the discretionary function

-5-

exception was designed to shield. Because the exception's purpose is to prevent judicial second-guessing of government decisions based on public policy considerations, it protects only those judgments grounded in social, economic, and political policy.

Riley v. United States, 486 F.3d 1030, 1032 (8th Cir. 2007) (citations and internal marks omitted). Where the United States has not waived sovereign immunity under the FTCA, the district court lacks subject matter jurisdiction to hear the case. See Green Acres Enters. v. United States, 418 F.3d 852, 857 (8th Cir. 2005); see also Dykstra v. United States, 140 F.3d 791, 795 (8th Cir. 1998) ("To the extent an alleged act falls within the discretionary function exception, a court lacks subject matter jurisdiction.").

### 2. Burden of Proof Irrelevant

As a threshold matter, Hart argues the district court erred in *sua sponte* ruling on the issue of subject matter jurisdiction. Hart asserts the United States bears the burden to prove the discretionary function exception to the FTCA applies. Based upon that premise, Hart opines "[t]he government was never forced to prove that the discretionary function exception applies so the District Court, in essence, shifted that burden to [Hart] who is now forced to prove that the exception does not apply." Hart concludes reversal is appropriate but cites no apposite legal authority for her conclusion.

Assuming without deciding Hart is correct that the government bears the burden to prove the discretionary function exception to the FTCA applies,[3] the district court

---

[3]Our sister circuit courts of appeals are divided on the burden-of-proof issue. See St. Tammany Parish ex rel. Davis v. FEMA, 556 F.3d 307, 315-16 n.3 (5th Cir. 2009) (collecting cases). Although we have not yet taken a formal position on this precise issue, see id., we have (1) repeated the general rule that "[t]he burden of proving federal jurisdiction . . . is on the party seeking to establish it, and 'this burden may not be shifted to' the other party," Great Rivers, 615 F.3d at 988 (quoting

nonetheless did not err in *sua sponte* ruling on the issue of subject matter jurisdiction. It is well established that a court has a special obligation to consider whether it has subject matter jurisdiction in every case. See Clark v. Baka, 593 F.3d 712, 714 (8th Cir. 2010) (per curiam). This obligation includes the concomitant responsibility "to consider *sua sponte* [the court's subject matter] jurisdiction . . . where . . . [the court] believe[s] that jurisdiction may be lacking." Id. As indicated, if the discretionary function exception applies, the United States has not waived sovereign immunity and there is no subject matter jurisdiction. See Green Acres, 418 F.3d at 857. Therefore, the district court did not err in *sua sponte* deciding whether the discretionary function exception applied in this case. See Clark, 593 F.3d at 714.

Hart cites no legal authority for her argument that, merely by raising the discretionary function exception issue *sua sponte*, the district court somehow relieved the United States of its purported burden to prove the discretionary function exception applies. The district court's order is silent as to which party bore the burden. In any event, as indicated below, which party bore the burden is irrelevant here, because the material jurisdictional facts are undisputed and the discretionary function exception plainly applies. See St. Tammany Parish, 556 F.3d at 315-16 n.3 (collecting cases in which circuit courts of appeals have avoided the issue of which party bears the burden to prove the discretionary function exception applies).

---

Newhard, Cook & Co. v. Inspired Life Ctrs., Inc., 895 F.2d 1226, 1228 (8th Cir. 1990)); (2) applied such principle in an FTCA case, see Riley, 486 F.3d at 1031-32 (quoting Green Acres, 418 F.3d at 856); (3) stated, in conjunction with the second part of the discretionary-function-exception test, "it is [the plaintiff], not the United States, who must assert facts that show the decision was not based on policy considerations," Dykstra, 140 F.3d at 796; and (4) affirmed a district court's decision placing the burden upon the plaintiff, see Bacon v. United States, 661 F. Supp. 8, 10 (E.D. Mo. 1986), aff'd, 810 F.2d 827 (8th Cir. 1987).

### C.    Discretionary Function Exception Applies

Hart advances several reasons why the discretionary function exception does not apply here.   Hart criticizes the district court for overly emphasizing the Handbook's granting of discretion to BIA officers in deciding when and how to restrain a suspect.  Hart explains her complaint grounds the government's liability not only on S/A Robertson's failure to restrain Block, but also S/A Robertson's "overall failure to supervise and control Block."   Hart argues other arrest procedures in the Handbook are mandatory and criticizes S/A Robertson's decision to allow Block to leave S/A Robertson's presence.  Hart relies upon her expert witness's testimony that allowing Block freely to enter the house was unreasonable, negligent, and "patently inconsistent with nationally recognized protocols for making arrests."    Hart characterizes these national standards as "mandatory."

The district court did not err.  The discretionary function exception clearly applies, and the district court lacked jurisdiction over Hart's complaint.  Turning to the familiar two-part test:

First, S/A Robertson's actions were the product of the wide discretion afforded to him as a BIA officer in effectuating Block's arrest.  By its terms, the Handbook merely "establishes guidelines for contact with . . . arrestees" and explicitly "permits some discretion in the use of handcuffs and restraining devices."   The Handbook repeatedly limits its own recommendations to, for example, "the majority of arrests" and "most prisoners."   While some provisions of the Handbook are phrased in imperative language, in context, all of the decisions S/A Robertson made regarding Block's arrest remained "discretionary, involving 'an element of judgment or choice.'"   Riley, 486 F.3d at 1032; cf. Four v. United States ex. rel. BIA, 431 F. Supp. 2d 985, 991 (D.N.D. 2006) (holding other provisions of the Handbook, relating to a dispatcher determination of whether immediate assistance is needed, are discretionary).  The Handbook's granting of discretion is consistent with our prior recognition that "[l]aw enforcement decisions of the kind involved in making or

terminating an arrest must be within the discretion and judgment of enforcing officers." Deuser v. Vecera, 139 F.3d 1190, 1195 (8th Cir. 1998). Hart's characterization of nationally recognized protocols for making arrests as mandatory does not make them so.

Second, because the Handbook granted S/A Robertson discretion to afford Block some freedom of movement before transporting him to jail, we presume S/A Robertson's actions were grounded in the sort of policy choice that the discretionary function exception was designed to shield from liability in tort. See United States v. Gaubert, 499 U.S. 315, 324 (1991) ("When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion."). Hart does not cite, and we cannot find, any law or facts rebutting this presumption. We readily conclude a federal law enforcement officer's on-the-spot decisions concerning how to effectuate an arrest—including how best to restrain, supervise, control or trust an arrestee—fall within the discretionary function exception to the FTCA absent a specific mandatory directive to the contrary. See, e.g., Dykstra, 140 F.3d at 796 ("We have no difficulty in concluding that the discretionary function exception applies to the correctional officer's decision not to place Dykstra in protective custody or to take other protective action."); Deuser, 139 F.3d at 1195-96 (holding a park ranger's decision to terminate an arrest falls within the discretionary function exception to the FTCA, because such decision was the "classic example" of conduct grounded in policy); Mesa v. United States, 123 F.3d 1435, 1438 (11th Cir. 1997) (holding the manner in which federal law enforcement agents investigated a suspect and executed an arrest warrant fell within the discretionary function exception to the FTCA). Such decisions are quintessential examples of the permissible exercise of policy judgment. In an analogous case, the Eleventh Circuit Court of Appeals recently observed:

In general, because it is the mandatory duty of law enforcement agents to enforce the law, decisions as to how to best fulfill that duty are protected by the discretionary function exception. . . . [The agent is] required to consider his training, the need to restrain [the arrestee], the concern for [the arrestee's] safety, the public's safety, his available resources, and the information at hand in determining the proper course of action. All of these factors indicate that the decision regarding how to best effectuate an arrest warrant is "fundamentally rooted in policy considerations, and that judicial second-guessing of this decision thus is not appropriate."

Williams v. United States, 314 F. App'x 253, 257-58 (11th Cir. 2009) (unpub. per curiam) (quoting Mesa, 123 F.3d at 1438).

## III. CONCLUSION

We affirm, modifying the district court's dismissal to be without prejudice. See Romero v. Pinnacle Equities, LLC, 283 F. App'x 429, 431 (8th Cir. 2008) (unpub. per curiam) (where the district court found subject matter jurisdiction lacking and dismissed the plaintiff's complaint with prejudice, affirming but modifying the judgment to be without prejudice); Garza v. U.S. Bureau of Prisons, 284 F.3d 930, 934, 938 (8th Cir. 2002) (affirming the district court's dismissal without prejudice of plaintiff's FTCA claim for lack of subject matter jurisdiction); Murray v. United States, 686 F.2d 1320, 1327 n.14 (8th Cir. 1982) (affirming the dismissal of appellant's claims without prejudice because, "[w]here a motion to dismiss for lack of subject matter jurisdiction is granted on grounds of sovereign immunity, the court is left without power to render judgment on the merits of the case"). But see Benigni v. United States, No. 97-3181, 1998 WL 165159, at *1 (8th Cir. Apr. 10, 1998) (unpub. per curiam) (affirming the district court's dismissal, with prejudice, of an FTCA claim because the "claim was barred by the 'discretionary function' exception"); Frigard v. United States, 862 F.2d 201, 204 (9th Cir. 1988) (per curiam) (affirming district court's dismissal with prejudice, because "the bar of sovereign

-10-

immunity is absolute: no other court has the power to hear the case, nor can the [plaintiffs] redraft their claims to avoid the exceptions to the FTCA").

_____